

CALLISTER NEBEKER & McCULLOUGH
WILLIAM H. CHRISTENSEN (4810)
JAMES E. MERRELL (7578)
10 East South Temple Suite 900
Salt Lake City, UT 84133
Telephone: (801) 530-7300
Facsimile: (801) 364-9127

Attorneys for Plaintiff
MONY LIFE INSURANCE COMPANY

---

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| MONY LIFE INSURANCE COMPANY, a New York corporation, | **COMPLAINT** |
| Plaintiff, | Civil No. |
| vs. | Judge: |
| TODD A. REID, JUSTIN RICKS, LAHN SIMMONS, JAMES DUKE, MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, a Massachusetts corporation, and JOHN DOES 1-10. | **JURY DEMAND**<br><br>**2:03CV-0219** DB |
| Defendants. | |

---

MONY LIFE INSURANCE COMPANY, a New York corporation (hereinafter "MONY"), through its counsel, complains and alleges:

366100.4

**PARTIES**

1.      MONY is a corporation incorporated in the State of New York, with its principal place of business in the State of New York.  MONY is a registered Utah foreign corporation.

2.      Todd Reid ("Defendant Reid"), Justin Ricks ("Defendant Ricks"), Lahn Simmons ("Defendant Simmons"), James Duke ("Defendant Duke") are residents of the State of Utah.

3.      Defendant Massachusetts Mutual Life Insurance Company ("Defendant MassMutual") is a Massachusetts corporation with its principal place of business in the State of Massachusetts.  Defendant MassMutual is a registered Utah foreign corporation. Defendants Reid, Ricks, Simmons and Duke are now employees or officers of Defendant MassMutual. Defendants Reid, Ricks, Simmons and Duke and Defendant MassMutual are hereinafter referred to collectively as "Defendants."

4.      John Does 1-10 are persons whose identities are unknown at this time that have reached contractual, common law or tort duties, owed to the Plaintiff.  Their exact identities, if determined, will be set forth in supplemental pleadings.

**JURISDICTION AND VENUE**

5.      This court has jurisdiction over this matter under 28 U.S.C. Section 1332 in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties MONY and Defendant MassMutual are citizens of different states.  This court has

supplemental jurisdiction relating to the matters involving Defendants Reid, Ricks, Simmons and Duke under 28 U.S.C. Section 1367.

6.      Venue is proper in this judicial district under 28 U.S.C. Section 1391(a)(1) and (2).

## GENERAL ALLEGATIONS

7.      MONY is a life insurance and financial products company. MONY's business involves the solicitation of and the sale of insurance and other financial products to individuals and entities in Utah and throughout the United States.

8.      Essential to the business and economic success of MONY is a staff of knowledgeable and experienced financial professionals, who act on MONY's behalf soliciting MONY's products to individuals and entities.

9.      MONY's financial professionals are arrayed in a certain hierarchical organizational structure. The individuals at the relevant levels of the MONY organizational structure are designated as Managing Directors, Assistant Managing Directors and Field Underwriters.

10.     At the time Defendant Reid resigned his position at MONY, on approximately January 20 of 2003, he held the title of Managing Director with MONY. After Defendant Reid resigned his position at MONY he became a manager, officer or employee of Defendant MassMutual at Defendant Mass Mutual's office located less than 50 miles from the location of MONY's Midvale, Utah offices.

11.     At the time Defendant Ricks resigned his position at MONY, on approximately February 3 of 2003, he held the title of Assistant Managing Director with MONY.  After Defendant Ricks resigned his position at MONY he became a manager, officer or employee of Defendant MassMutual at Defendant Mass Mutual's office located less than 50 miles from the location of MONY's Midvale, Utah offices.

12.     At the time Defendant Simmons resigned his position at MONY, on approximately February 3 of 2003, he held the title of Assistant Managing Director with MONY.  After Defendant Simmons resigned his position at MONY he became a manager, officer or employee of Defendant MassMutual at Defendant Mass Mutual's office located less than 50 miles from the location of MONY's Midvale, Utah offices.

13.     At the time Defendant Duke resigned his position at MONY, on approximately February 4 of 2003, he held the title of Assistant Managing Director with MONY.  After Defendant Duke resigned his position at MONY he became a manager, officer or employee of Defendant MassMutual at Defendant Mass Mutual's office located less than 50 miles from the location of MONY's Midvale, Utah offices.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)
### (Defendants Reid, Ricks and Simmons)

14.     MONY  incorporates by reference the foregoing paragraphs.

15.     In consideration for and as a condition of entering into an agency agreement with MONY, dated on or about August 15, 1994, Defendant Reid agreed in writing to adhere to the following provision, among others in such agreement:

> For a period of two years from the voluntary or involuntary termination of this contract, you will not directly or indirectly, or aid or abet others to, (i) solicit any holder of, or insured under, a policy issued by the Company which is Business Produced by You [. . . ] (ii) induce or attempt to induce any Field Underwriter broker or employee of the Company to terminate their relationship with the Company [. . . ]

> You agree that the Company shall have the right to obtain an injunction in the event you violate any provision of this contract, without prejudice to any other recourse the Company might have, including an action for damages.

This Agreement is known as Reid's Career Contract Agreement. (See Exhibit 1, "Reid's Career Contract Agreement," attached hereto and incorporated by reference.)

16.     Subsequently, on or about April 26, 1999, Defendant Reid entered into an agreement ("Reid's Managing Director's Agreement") wherein Defendant Reid agreed in writing to the following provision, among others:

> For a period of two years from the voluntary or involuntary termination of this contract, you will not directly or indirectly, or aid or abet others to: (i) solicit any holder of, or insured under, a policy issued by the Company which is Business Produced By Your Agency, or [. . . ] (ii) induce or attempt to induce any field underwriter, broker or employee of the Company to terminate their relationship with the Company or to solicit or sell insurance for any other company of the kind which the Company is authorized to do and is doing. The restriction contained in this paragraph shall apply only to holder of, or insurers under, policies issued by the Company who live or work in the city in which the agency or any sub-agency of the agency, is located and within a radius of 50 miles from the city limits of that city and to filed underwriters, brokers, or employees of the Company who are assigned to the agency [. . . ]

> You agree that the Company will suffer irreparable harm and therefore, shall have the right to obtain an injunction in the

> event you violate any provision of this appointment, without
> prejudice to any other recourse the Company might have,
> including an action for damages.

(See <u>Exhibit 2</u>, "Reid's Managing Director's Agreement," April 26, 1999, page 2, attached

hereto and incorporated by reference.)   Reid's Career Contract Agreement and Reid's

Managing Director's Agreement are hereinafter referred to collectively as "Reid's

Contracts".

      17.    In consideration for and as a condition of entering into an agency agreement

with MONY, dated on or about February 8, 1999, Defendant Ricks agreed in writing to

adhere to the following provision, among others in such agreement:

> For a period of two years from the voluntary or involuntary
> termination of this contract, you will not directly or indirectly, or
> aid or abet others to, (i) solicit any holder of, or insured under,
> a policy issued by the Company which is Business Produced
> by You [. . . ] (ii) induce or attempt to induce any Field
> Underwriter broker or employee of the Company to terminate
> their relationship with the Company [. . . ]
>
> You agree that the Company shall have the right to obtain an
> injunction in the event you violate any provision of this contract,
> without prejudice to any other recourse the Company might
> have, including an action for damages.

This Agreement is known as Ricks' Career Contract Agreement. (See <u>Exhibit 3</u>, "Ricks'

Career Contract Agreement," attached hereto and incorporated by reference.)

      18.    Subsequently, on or about April 2, 2001, Defendant Ricks entered into an

agreement ("Ricks' Assistant Managing Director's Agreement") wherein Defendant Ricks

agreed in writing to the following provision, among others:

For a period of two years from the voluntary or involuntary termination of this contract, you will not directly or indirectly, or aid or abet others to: (i) solicit any holder of, or insured under, a policy issued by the Company which is Business Produced By Your Agency, or [. . . ] (ii) induce or attempt to induce any field underwriter, broker or employee of the Company to terminate their relationship with the Company or to solicit or sell insurance for any other company of the kind which the Company is authorized to do and is doing. The restriction contained in this paragraph shall apply only to holder of, or insurers under, policies issued by the Company who live or work in the city in which the agency or any sub-agency of the agency, is located and within a radius of 50 miles from the city limits of that city and to filed underwriters, brokers, or employees of the Company who are assigned to the agency [. . . ]

You agree that the Company will suffer irreparable harm and therefore, shall have the right to obtain an injunction in the event you violate any provision of this appointment, without prejudice to any other recourse the Company might have, including an action for damages.

(See Exhibit 4, "Ricks' Assistant Managing Director's Agreement," April 2, 2001, page 2, attached hereto and incorporated by reference.)  Ricks' Career Contract Agreement and Ricks' Assistant Managing Director's Agreement are hereinafter referred to collectively as "Ricks' Contracts".

19.     In consideration for and as a condition of entering into an agency agreement with MONY, dated on or about August 1, 2000, Defendant Simmons entered into an agreement ("Simmons' Assistant Managing Director's Agreement") wherein Defendant Simmons agreed in writing to the following provision, among others:

For a period of two years from the voluntary or involuntary termination of this contract, you will not directly or indirectly, or aid or abet others to: (i) solicit any holder of, or insured under,

a policy issued by the Company which is Business Produced By Your Agency, or [. . . ] (ii) induce or attempt to induce any field underwriter, broker or employee of the Company to terminate their relationship with the Company or to solicit or sell insurance for any other company of the kind which the Company is authorized to do and is doing. The restriction contained in this paragraph shall apply only to holder of, or insurers under, policies issued by the Company who live or work in the city in which the agency or any sub-agency of the agency, is located and within a radius of 50 miles from the city limits of that city and to filed underwriters, brokers, or employees of the Company who are assigned to the agency [. . . ]

You agree that the Company will suffer irreparable harm and therefore, shall have the right to obtain an injunction in the event you violate any provision of this appointment, without prejudice to any other recourse the Company might have, including an action for damages.

(See Exhibit 5, "Simmons' Assistant Managing Director's Agreement," August 1, 2000, page 2, attached hereto and incorporated by reference.)  Simmons' Assistant Managing Director's Agreement is hereinafter referred to as "Simmons' Contract".

20.    Reid's Contracts, Ricks' Contracts, and Simmons Contract are hereinafter referred to as the "Contracts."

21.    During the several weeks subsequent to Defendants Reid's, Ricks', and Simmons' termination from MONY, Reid, and upon information and belief, Ricks and Simmons, breached the Contracts by directly and indirectly inducing and attempting to induce and aiding and abetting others to induce and attempt to induce MONY's employees, field underwriters and brokers (hereinafter referred to collectively as "MONY Agents") to terminate their relationship with MONY.

366100.4                                    8

22.     As a result of Defendants Reid's, Ricks' and Simmons' breach of their Contracts as set forth above, MONY Agents and employees in the Midvale, Utah office of MONY, including without limitation, Defendant Ricks, Defendant Simmons and Defendant Duke, which individuals held the position of Assistant Managing Directors (collectively "Assistant Managing Directors") and Jaron Poulsen, Todd Hillstead, Keaton Allen, Erin Tetro, Justin Tebbs, Justin Zaccaria and Blake Hansen, which individuals held the position of field underwriter agents ("Field Underwriters") terminated their contractual relationship with MONY. Both the Assistant Managing Directors and Field Underwriters worked with or under the supervision of, Defendant Reid.

23.     As a result of Defendants Reid's, Ricks and Simmons breach of their Contracts, MONY has been irreparably harmed, and has sustained damages, including but not limited to, loss of capital, loss of valuable business, loss of profits and of future profits, loss of goodwill and loss of its investment in training with respect to the Assistant Managing Directors and Field Underwriters and loss of their production, products, expertise, knowledge and leadership of other MONY agents, all in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of filing of this complaint.

## SECOND CLAIM FOR RELIEF
### (Intentional Interference with Existing Contractual and Business Relations as Relating to MONY Employees)
### (All Defendants)

24.     MONY incorporates by reference the foregoing paragraphs.

366100.4

9

25.     MONY's business relies, in part, on maintaining a highly trained staff of MONY agents as well as keeping the company's marketing and training techniques as confidential information.  MONY requires that MONY agents enter into written contracts as a condition of commencing their relationship with MONY and before receiving valuable training from MONY.

26.     MONY has existing business and contractual relationships with numerous MONY customers and MONY agents who sell MONY products and services to MONY's customers and who try to develop new customers.

27.     MONY has a reasonable expectancy of economic gain resulting from its business relationship with the MONY Agents who sell products and services for MONY and who generate sales and profit for MONY, and with its MONY managerial employees who train and supervise MONY agents that result in production and profits for MONY.

28.     MONY alleges that all of the Defendants knew or should have known that the Assistant Managing Directors and Field Underwriters were under contract with MONY and that the Assistant Managing Directors and Field Underwriters had contractual and common law duties to MONY.

29.     Beginning November of 2002 and continuing until February 2003, Defendant Reid, and upon information and belief, Defendants Ricks, Simmons and Duke, in their own capacities, and as agents of and in concert with Defendant MassMutual, despite the existing contractual relations of MONY Assistant Managing Directors and Field Underwriters to MONY, undertook a scheme to improperly induce the Assistant Managing

Directors and Field Underwriters, including, but not limited to, Defendant Ricks, Defendant Simmons, Defendant Duke, Todd Hillstead, Jaron Poulsen, Erin Tetro, Justin Zaccaria, Justin Tebbs, Keaton Allen and Blake Hansen, to breach their respective contractual relationships with MONY and thereby deprive MONY of the business advantages and benefits arising from its contractual and business relationships with the Assistant Managing Directors and Field Underwriters. Defendants' actions were without any justification under the law and were done with the improper purpose of harming MONY.

30.    In addition, upon information and belief, Defendant Mass Mutual knew, and should have known, that, while they were agents of and on the payroll of MONY, Defendants Reid, Ricks, Simmons and Duke had contractual and common law duties of loyalty, not to compete with MONY, not to induce others to do so, and not otherwise to interfere with, undermine or damage MONY's business or prospects. Nevertheless, on information and believe Defendant Mass Mutual induced Defendants Reid, Ricks, Simmons and Duke to violate their contractual and common law duties to MONY and interfere with the contractual and economic relations between MONY and the MONY Agents for the improper purpose of unfairly competing with MONY. MassMutual's recruitment of MONY Agents was accomplished through improper means, namely using Defendants Reid, Ricks, Simmons and Duke as their agents while they were under contract to MONY.

31.    Due to Defendants' tortious interference with contract, with prospective or potential business advantage, and with prospective and actual economic relations, MONY

has been irreparably harmed, and has sustained damages, including but not limited to, loss

of capital, loss of valuable business, loss of profits and of future profits, loss of goodwill and

loss of its investment in training with respect to the Assistant Managing Directors and Field

Underwriters and loss of their production, products, expertise, knowledge and leadership

of other MONY agents, all in an amount to be determined at trial, which damages are

ongoing and continue unabated at the time of filing of this complaint.

## THIRD CLAIM FOR RELIEF
### (Breach of Employee's Common Law Duty of  Loyalty and Fiduciary Duties as an Agent) (Defendants Reid, Ricks, Simmons and Duke)

32.    MONY  realleges and incorporates by reference the foregoing paragraphs of

this Complaint as if fully set forth herein.

33.    On the basis of their employment relationship, their status as managerial

employees and their agency relationships with MONY, Defendants Reid, Ricks, Simmons

and Duke had common law duties to be loyal and to act as fiduciaries and in good faith

with respect to MONY.  Included within the scope of these duties was the obligation not to

engage in intentional acts that would result in competitive or other harm or injury to MONY

or that would harm or that would damage MONY's business and goodwill while they were

still on the payroll of and agents of MONY.

34.    While employees of MONY, Defendants Reid, Ricks, Simmons and Duke

breached their fiduciary duty of loyalty with MONY by, among other things, soliciting their

colleagues to leave the employ of MONY to instead work for a competitor, Defendant

MassMutual.  Upon Information and belief, Defendant Reid further breached his duty of

loyalty by copying proprietary documents, information and materials belonging to MONY for use in connection with his new employment and business ventures and in competition with MONY.

35.     As a result of Defendants Reid's, Ricks', Simmons' and Duke's breach of their duty of loyalty as employees and agents of MONY, MONY has been irreparably harmed, and has sustained damages, including but not limited to, loss of capital, loss of valuable business, loss of profits and of future profits, loss of goodwill and loss of its investment in training with respect to the Assistant Managing Directors and Field Underwriters and loss of their production, products, expertise, knowledge and leadership of other MONY agents, all in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of filing of this complaint.

### FOURTH CLAIM FOR RELIEF
**(Breach of Implied Covenants of Good Faith, Loyalty and Fair Dealing)**
**(Defendants Reid, Ricks, Simmons and Duke)**

36.     MONY realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

37.     Based upon their employment agreements and agency relationships with MONY,  Defendants Reid, Ricks, Simmons and Duke had implied covenants and enforceable common law duties to deal fairly and in good faith with MONY. Included within the scope of these implied covenants was a specific obligation not to engage in acts and conduct which would render the covenants in the Contracts meaningless, to act with the intent to harm MONY's business and goodwill, or to otherwise prevent MONY from

obtaining the benefit of its bargain reflected in the Contracts.

38.     Defendant Reid, and upon information and belief, Defendants Ricks, Simmons and Duke breached these implied covenants of good faith and fair dealing with MONY by, among other things, while they were employed by MONY, soliciting their colleagues to work for their future employer, Defendant MassMutual, and, as to Defendant Reid, by copying proprietary documents, information and materials belonging to MONY for use in connection with his new employment and business ventures and in competition with MONY.

39.     As a result of these breaches of implied covenants by Defendants Reid, Ricks, Simmons and Duke, MONY has been irreparably harmed, and has sustained damages, including but not limited to, loss of capital, loss of valuable business, loss of profits and of future profits, loss of goodwill and loss of its investment in training with respect to the Assistant Managing Directors and Field Underwriters and loss of their production, products, expertise, knowledge and leadership of other MONY agents, all in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of filing of this complaint.

### FIFTH CLAIM FOR RELIEF
### (Conspiracy)
### (Against all Defendants)

40.     MONY  realleges and incorporates by reference the foregoing  paragraphs of this Complaint as if fully set forth herein.

41.     In concert one with the other, and by a mutual meeting of minds, Defendants

Reid and MassMutual, and upon information and belief, Defendants Ricks, Simmons and Duke, conspired together during the last months of calendar year 2002 up to and including the present time, to breach Defendants Reid's, Ricks' and Simmons' Contracts, to intentionally interfere with MONY's existing and prospective contractual and business relations relating to MONY Agents and employees, to breach Defendants Reid's, Ricks', Simmons' and Duke's duties of loyalty to MONY and to breach the implied covenant of good faith and fair dealing they have with MONY.

42.    Defendants Reid and MassMutual, and upon information and belief, Defendants Ricks, Simmons and Duke, in furtherance of their conspiracy, overtly acted as set forth more particularly in the preceding paragraphs, including, but not limited to, recruiting MONY Agents and employees to a direct competitor through the use of Defendants Reid's, Ricks', Simmons' and Duke's relationship with the MONY Agents.

43.    As a result of Defendants' conspiracy, MONY has been irreparably harmed, and has sustained damages, including but not limited to, loss of capital, loss of valuable business, loss of profits and of future profits, loss of goodwill and loss of its investment in training with respect to the Assistant Managing Directors and Field Underwriters and loss of their production, products, expertise, knowledge and leadership of other MONY agents, all in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of filing of this complaint.

## SIXTH CLAIM FOR RELIEF
### (Injunctive Relief Against All Defendants)

44.    MONY realleges and incorporates by reference the foregoing paragraphs of

366100.4                                       15

this Complaint as if fully set forth herein.

45.    MONY is in danger of and is currently suffering immediate and irreparable injury to its business because Defendants are continuing to solicit existing MONY Agents and employees to work for Defendant MassMutual instead of MONY.  The tortious and contractually-breaching solicitation of MONY Agents is ongoing and continuing unabated, including the solicitation of Blake Hansen, who resigned February 14, 2003, Keaton Allen, who resigned February 24, 2003, and Justin Tebbs, who resigned February 28, 2002. MONY is losing the benefit of its contracts with MONY agents and the benefits prospectively arising from its relationship with its agents and employees, and present and future profits every day that Defendants are permitted to interfere with MONY's existing and prospective contractual advantages and unfairly compete with MONY.

46.    As part of the Contracts, Defendants Reid, Ricks and Simmons agreed that a breach of their provisions will cause MONY irreparable harm and that an injunction is a necessary, but not exclusive, remedy against such harm.

47.    The irreparable harm to MONY will continue to occur unless the Court enters an order enjoining Defendants from inducing persons under contract to MONY to breach contracts and to work for Defendant MassMutual, a direct competitor.  Without injunctive relief restraining the Defendants, MONY will further be unable to recruit sufficient MONY Agents to staff its sales operations, its good will and place in the market will diminish and it will have a smaller number of MONY Agents in subsequent years.

48.    The threatened injury to MONY outweighs whatever damage, if any, the

366100.4                                                    16

injunction would cause to the Defendants.

49.    Injunctive relief in favor of MONY would not be adverse to the public interest.

50.    MONY is entitled to a preliminarily injunction enjoining Defendants from further inducing MONY Agents to terminate their existing contractual relationships with MONY and from advising and assisting others to breach their employment contracts with MONY. MONY is entitled to an order enjoining Defendants during this litigation and permanently from soliciting MONY Agents and prospective MONY Agents to enter into competition with MONY in violation of existing agreements and to restrain interference with existing contractual relations.

## PRAYER FOR RELIEF

WHEREFORE, MONY prays this Court for relief as follows:

a.    As to the First Claim for Relief, Breach of Contract, judgment should be entered in favor of MONY and against Defendants Reid, Ricks and Simmons in an amount to be proven at trial, of not less than $75,000 for MONY's actual damages, consequential damages, lost profits, together with an award of accruing pre-judgment and post-judgment interest, costs and attorney fees;

b.    As to the Second Claim for Relief, Intentional Interference with Existing Contractual and Business Relations as Relating to MONY Agents, judgment should be entered in favor of MONY and against Defendants in an amount to be proven at trial for MONY's actual damages, consequential damages, lost profits, interest, costs and attorney fees;

c.      As to the Third Claim for Relief, breach of the duty of loyalty arising from Defendants Reid's, Ricks', Simmons' and Duke's employment relationship with MONY, judgment should be entered in favor of MONY and against Defendants Reid, Ricks, Simmons and Duke in an amount to be proven at trial for MONY's actual damages, consequential damages, lost profits, interest, costs and attorney fees;

d.      As to the Fourth Claim for Relief, Breach of the Covenant of Good Faith and Fair Dealing arising from Defendants Reid's, Ricks', Simmons' and Duke's Contracts with MONY, judgment should be entered in favor of MONY and against Defendants Reid, Ricks, Simmons and Duke in an amount to be proven at trial for MONY's actual damages, consequential damages, lost profits, interest, costs and attorney fees;

e.      As to the Fifth Claim for Relief, Conspiracy, judgment should be entered in favor of MONY and against Defendants in an amount to be proven at trial for MONY's actual damages, consequential damages, lost profits, interest, costs and attorney fees;

f.      As to the Sixth Claim for Relief, a preliminary and permanent injunction should be entered restraining Defendants from interfering with MONY's existing and prospective contractual relations with MONY Agents and prospective MONY Agents and unfair competition practices; and,

g.      The Court should grant judgment to MONY and against Defendants and award  MONY its costs, interest and attorneys fees together with such further and additional relief as is just and reasonable pursuant to Rule 54(c) F.R.C.P.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, MONY requests trial by jury in this matter.

DATED:  February 28, 2003

By: _____
CALLISTER NEBEKER & McCULLOUGH
William H. Christensen
James E. Merrell
Attorneys for Plaintiff
MONY LIFE INSURANCE COMPANY

Plaintiff's Address:
MONY Life Insurance Company
1740 Broadway
New York, NY 10019

366100.4

19

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.